# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

DAVID LEE THOMAS,

*Defendant.*

Criminal Action No. 17-194 (RDM)

## MEMORANDUM OPINION AND ORDER

Defendant David Lee Thomas is charged in a fourteen-count indictment with crimes relating to a series of armed robberies. Five counts of the indictment allege that he committed a series of robberies in violation of the Hobbs Act, 18 U.S.C. § 1951; five counts allege that he used or carried a "firearm" in "relation to" or possessed a "firearm" in "furtherance of" a crime of violence in violation of 18 U.S.C. § 924(c); two counts allege that he committed two robberies while armed with a "firearm" in violation of D.C. law, D.C. Code §§ 22-2801, 22-4502; and two counts allege that he possessed a "firearm" while committing those armed robberies in violation of D.C. law, D.C. Code § 22-4504(b). In two motions, Thomas moves to dismiss all but the Hobbs Act counts of the indictment on the ground that the "weapon" the Metropolitan Police Department ("MPD") recovered "was missing a number of key parts," including its hammer and trigger. Dkt. 39 at 2; *see also* Dkt. 22. He argues that a weapon missing these parts does not satisfy the federal or D.C. statutory definitions of a "firearm"; that one portion of the federal statutory definition is unconstitutionally vague; that the government's contention that the "frame or receiver" of a gun is the "firearm" for present purposes constitutes a constructive amendment of the indictment, in violation of the Fifth Amendment to the U.S. Constitution; and that, at a

minimum, the government must prove that Thomas knew that a "frame or receiver" is a "firearm." *See* Dkt. 22; Dkt. 39. For the reasons explained below, the Court will deny both motions.

## I. BACKGROUND

On May 3, 2018, a grand jury returned a fourteen-count superseding indictment charging Thomas with crimes relating to a series of armed robberies. *See* Dkt. 8. Those charges fall into three general groups:

*First*, Counts One, Three, Five, Nine, and Eleven charge Thomas with violating the Hobbs Act, 18 U.S.C. § 1951. Dkt. 8 at 1–2, 4–5, 7 ("Hobbs Act counts"). The Hobbs Act counts are not implicated by the instant motions.

*Second*, Counts Two, Four, Six, Ten and Twelve charge Thomas with "Using, Carrying, and Possessing a Firearm During a Crime of Violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)." *Id.* at 2–8 ("§ 924(c) counts"). Section 924(c)(1)(A) provides for enhanced penalties for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). Section 921(a)(3), in turn, defines a "firearm" as:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

*Id.* § 921(a)(3). The indictment alleges that Thomas knowingly used, carried "during and in relation to," and possessed "in furtherance of" the Hobbs Act violations "a firearm, that is, a Firearms Import and Export Corp. Western Duo .22 caliber revolver." Dkt. 8 at 2–8.

*Third*, Counts Seven and Thirteen charge Thomas with "Armed Robbery, in violation of Title 22, District of Columbia Code, Sections 2801, 4502," and Counts Eight and Fourteen charge him with "Possession of a Firearm During Crime of Violence or Dangerous Offense, in violation of Title 22, District of Columbia Code, Section 4504(b)." *Id.* at 5, 8 ("D.C. Code counts"). The D.C. Code defines a firearm as "any weapon, regardless of operability, which will, or is designed or redesigned, made or remade, readily converted, restored, or repaired, or is intended to, expel a projectile or projectiles by the action of an explosive." D.C. Code. § 22-4501(2A). The indictment alleges that Thomas stole a cellphone on two occasions from the same victim, "while armed with a Firearms Import and Export Corp. Western Duo .22 caliber revolver," and that on both occasions he possessed "a firearm, that is, a Firearms Import and Export Corp. Western Duo .22 caliber revolver, while committing the crime of Armed Robbery." Dkt. 8 at 5, 8.

Thus, nine of the fourteen counts are premised on Thomas's use or possession of a firearm. The revolver that the MPD recovered, however, was "missing its hammer, hammer screw, trigger, cylinder stop, hand, ejector rod housing, base pin, screw, nut, spring, loading gate detent and spring and miscellaneous screws." Dkt. 37 at 61–62 (Apr. 22, 2019 Hrg. Tr.). Thomas has filed two motions focusing on that undisputed fact.

He first moves to dismiss the § 924(c) counts based on the missing parts. *See* Dkt. 22. He argues that the revolver was not capable of expelling a projectile and was not, at least at the time the gun was seized, "designed to" do so. *Id.* at 2. In his view, this leaves only one possibility under the relevant statutory text—that the revolver could "readily" have been "converted to expel a projectile." *Id*. at 3. But that clause of the statutory definition of "firearm"

is, according to Thomas, unconstitutionally vague because the statute "provides no objective criteria to be used in assessing whether a weapon is 'readily convertible.'" *Id.* at 4–5.

In response, the government makes only passing reference to Thomas's vagueness argument. Dkt. 26 at 9–11. It, instead, focuses on two other clauses of the statutory definition. The government first argues that the revolver, even with the missing parts, is nonetheless "designed to . . . expel a projectile," 18 U.S.C. § 921(a)(3)(A), and, second, argues that it is at least "the frame or receiver of . . . such [a] weapon," *id.* § 921(a)(3)(B). Dkt. 26 at 4–9. Under either clause of the statutory definition, according to the government, the fact that the gun was inoperable is immaterial. "Because [§] 921(a)(3) is written in the disjunctive," and because a reasonable jury could find that the "designed to" or "frame or receiver" clause is satisfied, the government submits that it need not "demonstrate that" the revolver "may readily be converted" to expel a projectile. Dkt. 26 at 11.

The Court held a hearing on Thomas's initial motion on April 22, 2019. Dkt. 37 (Apr. 22, 2019 Hrg. Tr.). A week later, the Court granted Thomas leave to supplement his motion or to file a further motion relating to the statutory definition of "firearm." Thomas took both paths. He supplemented his motion to dismiss the § 924(c) counts, Dkt. 40, arguing that the statutory reference to "frame or receiver" applies only to the frame or receiver of any "such weapon" and thus does not overcome the statutory requirements that the "weapon"—at the time of the crime of violence—must have been capable of expelling or designed to expel a projectile. He also filed a second motion to dismiss, this time seeking dismissal of both the § 924(c) and the D.C. Code counts, arguing that, to the extent the government contends that use or possession of the "frame or receiver" of the revolver violated the relevant statutes, that theory constitutes a constructive amendment of the superseding indictment in violation of the Fifth Amendment. Dkt. 39.

Finally, Thomas argues that under the reasoning of the Supreme Court's decision in *Staples v. United States*, 511 U.S. 600 (1994), the government must at least prove at trial that Thomas knew that a "frame or receiver" is a "firearm" for purposes of § 924(c).[1] *Id.* at 5–6.

The two motions to dismiss, Dkt. 22 and Dkt. 39, are now before the Court for decision.

## II. ANALYSIS

### A. Motion to Dismiss § 924(c) Counts for Failure to State an Offense

Thomas's first motion starts with the undisputed fact that the revolver at issue here "was missing at least three parts: the trigger; the hammer; and the cylinder pin," and, on that basis, argues that (1) the gun does not qualify as a "firearm" within the meaning of § 921(a)(3)'s "will" expel or "is designed to" expel clauses and, (2) even if the "readily-converted" clause of the definition might apply, that clause is unconstitutionally vague. Dkt. 22 at 2–3. Although the statutory definition of a "firearm" is a question of law, "the determination of whether a particular weapon fits within the legal definition of a firearm under that statute is a question of fact" that is reserved for the jury. *United States v. Yannott*, 42 F.3d 999, 1005 (6th Cir. 1994). At trial, the government will bear the burden of demonstrating beyond a reasonable doubt that the revolver at issue meets the statutory definition of a "firearm" under 18 U.S.C. § 921(a)(3). At this stage, the Court need only—and should only—evaluate whether the indictment "fail[s] to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v).

The Court's role in considering a motion to dismiss an indictment for failure to state an offense pursuant to Rule 12(b)(3)(B)(v) is a narrow one. The Court "'is limited to reviewing the

---

[1] Because this final contention does not provide a basis for the pretrial dismissal of the indictment, and because the Court has yet to consider how to instruct the jury or whether the evidence, which has not yet been presented, is (or will be) sufficient to sustain a conviction, the Court will deny this portion of Thomas's motion, without prejudice, as premature.

*face* of the indictment and, more specifically the *language used* to charge the crimes.'" *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (quoting *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis in original)). It "must 'presume the allegations of [the] indictment to be true.'" *Id.* (quoting *United States v. Fiander*, 547 F.3d 1036, 1041 n. 3 (9th Cir. 2008) (internal citation and quotation marks omitted)). And, it must refrain from assessing the sufficiency of the evidence, which has not yet been presented. *Id.*

Measured against this standard, Thomas confronts a substantial hurdle. Each of the § 924(c) counts allege that Thomas "did unlawfully and knowingly use, and carry during and in relation to, and possess in furtherance of, a crime of violence, for which he may be prosecuted in a court of the United States, a firearm, that is, a Firearms Import and Export Corp. Western Duo .22 caliber revolver." Dkt. 8 at 2–4, 6–8. That language tracks the text of 18 U.S.C. § 924(c), which is all that is required at this early stage of the proceeding. The question whether the government can prove its case as charged—absent a legal defect in the indictment—is a question of fact for the jury.

In an effort to bring his argument within the scope of Rule 12(b)(3)(B)(v), Thomas constructs a three-part syllogism. First, he posits that an essential element of a violation of § 924(c) is that the defendant use or possess a "firearm" in furtherance of a crime of violence. Dkt. 22. That premise is undisputed. Second, he posits that the only portion of the definition of "firearm" that is even arguably applicable here asks whether the weapon at issue "may readily be converted to expel a projectile." *Id.* This second premise, according to Thomas, follows from the definition of "firearm" contained in 18 U.S.C. § 921(a)(3), which provides:

 (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;
(B) the frame or receiver of any such weapon; (C) any firearm muffler or

firearm silencer; or (D) any destructive device.  Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3).  In his view, the revolver at issue is not a weapon that "will . . . expel a projectile" because it is inoperable, and it is not a weapon "which . . . is designed to" do so because, even if originally designed to fire a bullet, the statutory definition is cast in the present tense, and the revolver is not, at present, designed to fire a bullet.  Dkt. 22 at 1–2.  This, then, leaves only the third possibility—that the revolver might "readily be converted to expel a projectile."  *Id.* at 3.  Finally, he posits that a charge that is founded on the "readily-converted" clause fails to state an offense because that portion of the definition is unconstitutionally vague. *Id.*

For present purposes, the Court can limit its analysis to the second of these premises and need not consider, at least at this stage of the proceeding, whether the statute's "readily-converted" clause is unconstitutionally vague.  If the government decides to press that theory of the case at the trial, the Court can decide whether to instruct the jury on that clause of the definition or whether to limit the jury instructions to the other, independently sufficient portions of the statutory definition.  With that limitation, and even accepting the government's concession that the revolver was inoperable (thus going beyond the face of the indictment), *see United States v. Yakou*, 428 F.3d 241, 246–47 (D.C. Cir. 2005) (noting that in the absence of an objection by the government, district courts may consider uncontested facts for purposes of a pretrial motion to dismiss an indictment), the Court concludes that the indictment does state an offense.

1.    *Section 921(a)(3)(A)*

Thomas's first contention is that, in its present state, the revolver "will [not] expel a projectile" because it lacks a trigger and hammer.  Dkt. 22 at 2.  That fact is undisputed: the government's expert testified that, when he first examined the revolver, "[i]t was inoperable."

Dkt. 37 at 64 (Apr. 22, 2019 Hrg. Tr.). The statutory definition, however, is not limited to weapons that "will" expel a projectile; it also includes weapons "designed" to do so. 18 U.S.C. § 921(a)(3)(A). But this alternative does not help the government, according to Thomas, because, in his view, a gun originally "designed to" expel a projectile "*is*" no longer designed to do so if the weapon is inoperable due to the absence of essential components (or, presumably, damage to those components). Dkt. 22 at 2. This reading of the statute, in essence, requires the Court to conclude that design and operability run hand-in-glove. Because such a reading would be at odds with the plain language of the statute and the overwhelming weight of precedent, the Court declines to do so.

Thomas's argument fails, in the first instance, because it reads the phrase "is designed to" out of the statute. That result is at odds with the maxim that courts must "presume that Congress did not 'include words' [in a statute] 'that have no effect.'" *Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1068 (D.C. Cir. 2018) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176–77 (2012)). Nor is it difficult to read § 921(a)(3) to give independent meaning to the phrases "will expel" and "designed to expel." Most notably, the phrase "designed to" broadens § 921(a)(3)'s reach beyond those weapons that "will" expel a projectile: A weapon can be "designed to" expel a projectile, even if it is inoperable. The word "design," in this context, means to "create, fashion … or construct according to a plan." Webster's New International Dictionary 611 (3d ed. 1993). Contrary to Thomas's contention, nothing in that definition, nor ordinary usage of the word, suggests that the "design" or "plan" for a thing changes merely because that thing is inoperable. The Titanic was, after all, "designed" to be unsinkable.

Every circuit to consider the question has come to the same conclusion: an inoperable weapon that "will" not expel a projectile—like the revolver here—still falls within the statutory definition of a firearm if it is "designed" to do so. *See, e.g.*, *United States v. Dotson*, 712 F.3d 369, 370–72 (7th Cir. 2013); *United States v. Davis*, 668 F.3d 576, 578 (8th Cir. 2012); *United States v. Rivera*, 415 F.3d 284, 286 (2d Cir. 2005); *United States v. Yannott*, 42 F.3d 999, 1006 (6th Cir. 1994); *United States v. Ruiz*, 986 F.2d 905, 910 (5th Cir. 1993); *United States v. York*, 830 F.2d 885, 891 (8th Cir. 1987). Courts have come to this conclusion, for instance, where a gun's "firing pin was broken" and its "firing-pin channel was peened," *Rivera*, 415 F.3d at 285; the "hammer was filed down," *Ruiz*, 986 F.2d at 910; the "firing pin" was "broken", *Yannott*, 42 F.3d at 1006; the firing pin was missing and the cylinder did not line up with the gun's barrel, *York*, 830 F.2d at 891; the trigger was missing, *Davis*, 668 F.3d at 576; and the gun "was inoperable because of 'significant damage, missing/broken parts, and extensive corrosion,'" *Dotson*, 712 F.3d at 370. The D.C. Circuit, moreover, has held that § 921(a)(3) includes guns that are inoperable and, in doing so, has cited with approval the Eighth Circuit's observation in *York*, that "it is enough that the 'weapon . . . is designed to . . . expel a projectile by the action of an explosive,'" 830 F.3d at 891. *See United States v. Gwyn*, 481 F.3d 849, 855 (D.C. Cir. 2007) (citing *York*); *United States v. Burke*, 888 F.2d 862, 869 (D.C. Cir. 1989) (same).

The relevant point is perhaps best made by use of an analogy. To borrow one from the Seventh Circuit, "a defect in [the] … maintenance" of an airplane "that prevents it from flying does not alter its design." *Dotson*, 712 F.3d at 371. Or, to borrow an analogy from the government's expert witness, an automobile that is missing its "tires and rims . . . doesn't cease to be an automobile. It doesn't cease to be designed to travel down a roadway and [to] transport individuals or cargo down that roadway. It is merely temporarily prevented from doing its

primary reason for being." Dkt. 37 at 63 (Apr. 22, 2019 Hrg. Tr.). Likewise here: a revolver may still be "designed" to expel a projectile even though, due to the removal of certain components, it can no longer do so.

Thomas takes issue with this distinction between the design and operation of a weapon and argues that, once the essential components of a firearm are removed, the weapon no longer falls within § 921(a)(3)'s "designed to" clause. Dkt. 22 at 2. For support, he points to two precedents. In the first, *United States v. Counce*, the Eighth Circuit observed that the "operation of a weapon may be relevant to whether it is designed to expel a projectile by the action of an explosive." 445 F.3d 1016, 1018 (8th Cir. 2006). In the second, *United States v. Wada*, the U.S. District Court for the District of Oregon held that the phrase "'is designed to,'" must "be given [its] ordinary meaning, and further opined that, as a matter of common usage, "'is designed to' does not mean 'was designed to.'" 323 F. Supp. 2d 1079, 1082 (D. Or. 2004) (internal citations omitted).

Neither decision supports Thomas's argument. *Counce* merely holds that operability is one of many relevant factors a jury might consider, but it is not determinative. 445 F.3d at 1018. Indeed, consistent with the weight of precedent, *Counce* recognizes that "§ 921(a)(3) does not require a firearm to be operable." *Id.* This Court agrees with both aspects of the Eighth Circuit's decision—operability is relevant, but a weapon that is inoperable may, nonetheless, be "designed to expel a projectile." *Wada*, in turn, merely supports the proposition that a weapon that undergoes a fundamental transformation—beyond merely missing several essential parts—may take on a new design. In *Wada*, the defendant had modified previously-functional weapons, by "cutting a slot out of the barrel," and sold them as "dewatted firearm-ornaments" to purchasers in Japan. 323 F. Supp. 2d at 1081. *Wada* does not hold that an inoperable gun, or a gun that is

missing certain essential components, is no longer "designed to expel a projectile." Rather, it holds that a gun might be so fundamentally altered or redesigned that it is no longer a gun.

To be sure, the meaning of "designed to" in § 921(a)(3) is not necessarily the same as "originally designed for," a phrase used elsewhere in the statute. *See* 18 U.S.C. § 921(a)(4). But, something more than inoperability is needed to render a firearm originally "designed to" expel a projectile into one that no longer is "designed to" do so. A gun turned into a "cigarette lighter," *Dotson*, 712 F.3d at 371, for example, might no longer be "designed to" expel a projectile. It is possible, moreover, that a gun missing so many parts that it no longer resembles a gun might no longer be "designed to" expel a projectile. *See id.* at 372. Whether the revolver at issue here has reached that point, however, is "a question of fact," *Davis*, 668 F.3d at 577, for the jury and is not a question suitable for resolution on a pretrial motion to dismiss the indictment for "failure to state an offense," Fed. R. Crim. P. 12(b)(3)(B)(v).

The Court, accordingly, concludes that, even though the revolver at issue here "was missing at least three parts," Dkt. 22 at 2, the indictment is legally sufficient and "state[s] an offense" under 18 U.S.C. § 924(c).[2] The question whether the government can prove the necessary elements of the offense—including the use or possession of a "firearm"—is one for the jury.

---

[2] Although Thomas does not seek dismissal of the D.C. Code counts in his first motion, the statutory definitions are sufficiently alike that the Court's principal conclusions apply under both regimes. D.C. Code. § 22-4501(2A) defines a firearm as: "any weapon, regardless of operability, which will, or is *designed* or redesigned, made or remade, readily converted, restored, or repaired, or is intended *to, expel a projectile* or projectiles by the action of an explosive." (emphasis added).

2. *Section 921(a)(3)(B)*

Although unnecessary in light of the Court's conclusion that the § 924(c) counts state an offense based on the "design" of the weapon, the government makes a second argument, which is also sufficient to avoid dismissal of the § 924(c) counts. Under this alternative approach, the government contends that its concession that the revolver at issue was missing its trigger, the hammer, and cylinder pin does not render the indictment deficient because the statutory definition of "firearm" includes "the frame or receiver of any such weapon," 18 U.S.C. § 921(a)(3)(B), and the revolver that the MPD seized included the weapon's "frame or receiver," *see* Dkt. 26. Thomas remains free to argue otherwise at trial. But, for purposes of his motion to dismiss the § 924(c) counts of the indictment, the Court agrees that nothing in the indictment or in the government's concession warrants dismissal.

Section 921(a)(3)(B) defines a firearm as "the frame or receiver of any such weapon." The statute does not define the phrase "frame or receiver." The governing regulations, however, are clear: The frame or receiver of a gun is "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 C.F.R. § 478.11. As the government's expert witness from the Bureau of Alcohol, Tobacco, Firearms and Explosives testified at the hearing on Thomas's motion to dismiss, "the frame or receiver is the central part of the firearm," as it "houses the firing components and the hammer" and is the "core component of the firearm that all the other parts are attached to." Dkt. 37 at 55–56 (Apr. 22, 2019 Hrg. Tr.).

For present purposes, Thomas does not dispute that the revolver recovered by the MPD included its "frame or receiver." Instead, he argues that more is required to meet the statutory definition of a "firearm" because the statute refers to "the frame or receiver" of "*any such*

*weapon*," 18 U.S.C. § 921(a)(3)(B) (emphasis added), and "such weapon" must refer to the proceeding statutory definition. Dkt. 40 at 2 (quoting 18 U.S.C. § 921(a)(3)(A)(emphasis added)). In other words, on Thomas's view, the "frame or receiver" clause must be read as follows: "the frame or receiver of any . . . weapon" that "will or is designed to . . . expel a projectile."[3] Because the government concedes that the revolver is inoperable, neither of those clauses applies, according to Thomas, and thus, under his reasoning, the "frame or receiver" clause also does not apply. *Id.* That contention fails on multiple levels.

As an initial matter, as previously explained, even an inoperable gun may be "designed to expel" a projectile. Accordingly, even by Thomas's own logic, the "frame or receiver" clause may apply. But, even putting that aside, Thomas's construction of the statute does not withstand scrutiny. To read "any such weapon" in § 921(a)(3)(B) to incorporate all of the requirements of § 921(a)(3)(A) would render § 921(a)(3)(B) meaningless. Accordingly, Thomas's argument, once again, runs headlong into "one of the most basic interpretive canons"—that is, "that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Thomas's theory also twists the statutory definition beyond comprehension: Under his theory, Congress included the "frame or receiver" of a weapon—which is, by definition, inoperable—in the statutory definition, but did so only for those frames or receivers that are part of an operable weapon. The Court rejects this mind-bending reading of the statute.

---

[3] The Court can leave the "readily converted to expel" clause, which the government mentions only in passing, for present purposes, to the side.

Because it is uncontested that the revolver here contained the "frame or receiver" and because the Court concludes that a "frame or receiver," standing alone, qualifies as a "firearm" within the meaning of the statute, the indictment states an offense even if the government relies exclusively on § 921(a)(3)(B).

**B.      Motion to Dismiss § 924(c) and D.C. Code Counts Under the Fifth Amendment**

After the government indicated that it may rely on the "frame or receiver" clause in presenting its case to the jury, Thomas filed a second motion.  Dkt. 39.  That motion argues that the indictment refers to "a Western Duo .22 Caliber Revolver," and not the "frame or receiver" of such a weapon, and that the government's "frame or receiver" argument, therefore, constitutes a constructive amendment to the indictment in violation of the Fifth Amendment.  *Id.* at 1. Unlike Thomas's earlier motion, this motion seeks dismissal of both the § 924(c) counts and the D.C. Code counts.  This motion fails as a matter of both procedure and substance.

The motion fails as a matter of procedure because the possibility that the government might present evidence and arguments to the jury that deviate from the indictment does not provide a basis to dismiss all or portions of the indictment, as Thomas proposes.  Such a deviation might provide grounds to preclude the government from offering that evidence or argument at trial, or it might provide grounds for setting aside a verdict premised on a constructive amendment to the indictment.  As Thomas himself puts it, "the basis for [his] motion is that the [g]overnment will seek to present evidence at trial that constructively amends the" indictment "returned by the Grand Jury."  Dkt. 39 at 1 (emphasis added).  But where a defendant's challenge turns on what will—or will not—occur at a "trial on the merits," a threshold motion to dismiss the indictment is premature.  Fed. R. Crim. P. 12(b)(1).  As a result, Thomas's challenge is not to the indictment but, rather, to the evidence and arguments that the

government might present.  That theory of constructive amendment, which is all that Thomas

presses, is therefore premature.[4]

Considered at this early stage of the proceeding, without the benefit of actual evidence

and argument, Thomas's argument is also unpersuasive.  Thomas is correct that, under the Fifth

Amendment, a defendant may not be "deprived of his right to have all charges screened by the

grand jury."  *United States v. Lemire*, 720 F.2d 1327, 1345 (D.C. Cir. 1983).  There are however

"two kinds of erroneous departure from the original indictment of a grand jury, each with its own

standards governing prejudice."  *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C. Cir. 1969).

As the D.C. Circuit has explained, "[a]n *amendment* of the indictment occurs when the charging

terms of the indictment are altered, either literally or in effect, by prosecutor or court after the

grand jury has last passed upon them."  *United States v. Mangieri*, 694 F.2d 1270, 1277 (D.C.

Cir. 1982) (quoting *Gaither*, 413 F.2d at 1071).  In contrast, "[a] *variance* occurs when the

charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts

materially different from those alleged in the indictment."  *Id.*  Because "a variance does not call

for dismissal of the indictment except upon a showing of prejudice," *Gaither*, 413 F.2d at 1072,

and because the Court cannot find any evidence of prejudice on the present record, Thomas is

---

[4]  Given this conclusion, the Court further holds that Thomas has not—and cannot—satisfy the standard for the production of grand jury minutes pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii).  *See* Dkt. 39 at 7.  "While there is some small disagreement among courts regarding what precise standard a defendant must meet in order to gain disclosure of grand jury materials under Rule 6(e)(3)(E)(ii), most courts have held that the appropriate standard is that of 'particularized need,' borrowed from the standard under the case law applying Rule 6(e)(3)(E)(i)."  *United States v. Naegele*, 474 F. Supp. 2d 9, 10 (D.D.C. 2007).  Criminal defendants, moreover, have only "rare[ly]" satisfied this test.  *Id.*  Here, Thomas merely speculates that the grand jurors were kept in the dark about the fact that the revolver was inoperable and would not have indicted Thomas had the prosecutors revealed the actual facts to them.  More is needed to invoke Rule 6(e)(3)(E)(ii).  *See id.* (citing cases).

limited—at least for now—to arguing that the government seeks constructively to amend the indictment.

The D.C. Circuit has explained that "[t]o distinguish between a constructive amendment and a variance," the Court should look to "the elements of the offense, the allegations of the indictment, and the nature of the evidence." *Mangieri*, 694 F.2d at 1277 (citation and quotation marks omitted). Again, however, the Court cannot apply this test without reviewing the actual evidence the government will proffer and that the Court will admit. Nor can the Court conclude on the present record that the government's "frame or receiver" theory would depart from the allegations contained in the indictment. The Supreme Court's decision in *Stirone v. United States*, 361 U.S. 212 (1960), is instructive on this latter point. In that case, a grand jury returned an indictment charging Stirone with using his "influential union position" for "extortion." *Id.* at 213–14. The indictment alleged that Stirone's extortion affected a victim's ability to move "supplies and materials (sand) . . . in interstate commerce between various points in the United States." *Id.* at 213. The victim intended to use the sand to make concrete for a steel-processing plant. *Id.* At trial, the judge instructed the jury that Stirone could be found guilty of "affecting interstate commerce" by finding either that "(1) sand used to make the concrete 'had been shipped from another state into Pennsylvania' or (2) '[the victim's] concrete was used for constructing a mill which would manufacture articles of steel to be shipped in interstate commerce." *Id.* at 214. The Supreme Court reversed the conviction, holding that the "grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand," but not steel, and "neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built with [the victim's] concrete." *Id.* at

217.  The Court concluded that the deviation in the government's "evidence had 'amended' the indictment by *broadening* the possible bases for conviction from that which appeared in the indictment."  *United States v. Miller*, 471 U.S. 130, 138 (1985) (summarizing *Stirone*).

Here, in contrast, the § 924(c) counts of the indictment charge Thomas with committing a series of robberies while armed with "a firearm, that is a Firearms Import and Export Corp. revolver."  *See, e.g.*, Dkt. 8 at 2.  Because the statutory definition of "firearm" includes a weapon that "will" expel a projectile, a weapon that is "designed" to do so, and "the frame or receiver of any such weapon," 18 U.S.C. § 921(a)(3), this language is best construed to include the allegation that Thomas committed the robberies while armed with "the frame or receiver" of a gun.  In other words, unlike in *Stirone*, this is not a case in which the government seeks to offer evidence that deviates from what the indictment alleges.

Thomas's sole retort posits that the next clause of each of the § 924(c) counts negates that construction by adding, "that is, a Firearms Import and Export Corp. Western Duo .22 caliber revolver."  Dkt. 39.  Although his contention is not unreasonable, it is also not persuasive.  The reference to the particular model revolver at issue does not speak to which clause of § 921(a)(3) the grand jury meant to invoke but, rather, adds clarity by naming the model and type of gun that Thomas allegedly used.  He did not use a Smith & Wesson or a Glock; he did not use a rifle or a semiautomatic handgun; he used a Firearms Import and Export Corp. Western Duo .22 caliber revolver.  Indeed, the only way to avoid that reading of the "that is" clause is to argue that it limits the reach of the indictment to Thomas's use of a *complete* Firearms Import and Export Corp. revolver, with *all* of its essential parts.  But, if that were right, the same argument that Thomas presses with respect to the "frame or receiver" clause of the definition would apply as well to the "designed to" clause, which, as discussed above, includes firearms that are missing

essential parts.  At least at this early stage of the proceeding, therefore, the Court cannot agree with that reading of the indictment and the prevailing precedent regarding constructive amendments.  Those courts that have considered similar questions have reached similar conclusions.  *See United States v. Hill*, 835 F.3d 796, 798 (8th Cir. 2016) (finding no constructive amendment even though the indictment charged defendant with possession of "ammunition, as defined by Title 18, United States Code, Section 921(17)(A), that is, 23 live rounds of Federal brand 9-millimeter Luger ammunition," but proof at trial was limited to possession of "propellent powder"); *United States v. Blair*, 189 Fed. Appx. 231, 233 (4th Cir. 2006) (rejecting the defendant's argument that an indictment had been constructively amended because the indictment referred only to "ammunition" and not to the component parts of that ammunition).

This, then, leaves Thomas's contention that "under the D.C. Code, a 'frame or receiver' is not a firearm."  Dkt. 39 at 4.  Thomas might be on firmer ground in arguing that the government's reliance on a "frame or receiver" theory in support of the D.C. Code counts would constitute a constructive amendment of the indictment for two reasons.  First, two of the D.C. Code counts do not refer to a "firearm" and, instead, refer only to "a Firearms Import and Export Corp. Western Duo .22 caliber revolver."  Dkt. 8 at 5 (count seven), 8 (count thirteen).  Second, the two D.C. Code counts that do use the word "firearm," *id*. at 5 (count eight), 8 (count fourteen), do not clearly incorporate the "frame or receiver" clause of the definition because that element is missing from the D.C. Code definition of "firearm."  Rather, the D.C. Code defines a "firearm" to mean

> any weapon, regardless of operability, which will, or is designed or redesigned, made or remade, readily converted, restored, or repaired, or is intended to, expel a projectile or projectiles by the action of an explosive.  The term "firearm" shall not include: (A) A destructive device as that term is defined in § 7-2501.01(7);

(B) A device used exclusively for line throwing, signaling, or safety, and required or recommended by the Coast Guard or Interstate Commerce Commission; or (C) A device used exclusively for firing explosive rivets, stud cartridges, or similar industrial ammunition and incapable for use as a weapon.

D.C. Code § 22-4501. A "destructive device," in turn, is defined in D.C. Code § 7-2501.01(7)(B) to mean a "device by whatever name known which will, or is designed or redesigned, or may be readily converted or restored to expel a projectile by the action of an explosive or other propellant through a small bore barrel, except a shotgun." In short, the statutory definition is expansive, but, unlike its federal counterpart, the definition makes no reference to the "frame or receiver" of the weapon.

The problem Thomas faces, however, is that there is no reason to believe that the government will seek to prove the D.C. Code counts based on a "frame or receiver" theory. Rather, in responding to Thomas's constructive amendment motion, the government explains at length that, in its view, the revolver at issue is "designed," "made," and "intended" to expel a projectile, and thus qualifies as a "firearm" for purposes of D.C. law. Dkt. 43 at 4 (quoting D.C. Code § 22-4501). None of these definitional theories implicates the "frame or receiver" theory that Thomas challenges in his second motion, and thus, at least on the present record, his constructive amendment argument has no bearing on the D.C. Code counts.

The Court, accordingly, holds that Thomas's constructive amendment argument is, at best, premature. Thomas may, if appropriate, raise the issue at a later stage of the proceeding, when the Court can consider the contention in light of the evidence and arguments the government seeks to present at trial and the jury instruction the parties propose.

## CONCLUSION

For the reasons explained above, the Court concludes that Defendant's motion to dismiss counts as void for vagueness, Dkt. 22, and motion to dismiss counts as constructively amending the indictment, Dkt. 39, are hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  August 29, 2019