**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

Criminal Action No. 17-194 (RDM)

DAVID LEE THOMAS,

*Defendant*.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant David Lee Thomas's second motion to suppress

tangible evidence, Dkt. 62.  This motion concerns certain items seized in a July 14, 2017 search

of a residence at 4721 Texas Avenue SE, Apartment 201, in Washington, D.C.  Dkt. 62 at 1.

Specifically, Thomas sought to suppress two cellphones, two bandanas (also described as scarves

or cloths), two red bags, a black baseball cap, narcotics, and a pair of sneakers.  *Id.* at 5–6.  The

Court has previously resolved the motion as to all items except the sneakers and now holds, for

the reasons explained below, that the sneakers were properly seized under the plain view

doctrine.  As such, the Court will **GRANT** Thomas's motion in part as to the two red bags;

**DENY** it in part as to the bandanas, baseball cap, and sneakers; and **DENY** it as moot in part as

to the cellphones, the admission of which Thomas is no longer contesting, and the narcotics,

which the government does not plan to enter into evidence.

**I.  BACKGROUND**

Because the background of this case is described in the Court's prior opinions, *see, e.g.*,

Dkt. 58; Dkt. 59, the Court here explains the procedural and factual history of the case only as

necessary to resolve the pending motion.

A.      **Procedural Background**

Thomas filed his second motion to suppress tangible evidence on January 22, 2020.

Dkt. 62.  In this motion, he argues that several items—two cellphones, two bandanas (also

described as scarves or cloths), two red bags, a black baseball cap, narcotics, and a pair of

sneakers—must be suppressed because police officers seized them pursuant to a search warrant

that violated the Fourth Amendment's particularity requirement.  Dkt. 62 at 5–7.  Since then, the

Court has resolved the motion as to every item except the sneakers.

In its opposition brief, the government concedes that it will "not seek to introduce the

narcotics into evidence at a trial of this matter."  Dkt. 64 at 3.  And in his reply brief, Thomas

dropped his argument about the cellphones, which "was made in error."  Dkt. 77 at 1 n.1.

On March 4, 2020, the Court held an initial hearing on the motion.  Minute Entry (Mar. 4, 2020).

At the hearing, the Court noted that the motion was moot with respect to the narcotics and

cellphones, in light of the parties' concessions.  Hearing Tr. (Rough at 18).  The Court also stated

its intention to deny the motion with respect to the red bandanas and the black cap, which the

Court determined were described with sufficient specificity in the warrant.  *Id*.  At the same time,

the Court explained that it would grant the motion with respect to the red bags, which were not

mentioned in the warrant at all.  *Id*.  Only the sneakers remained in dispute.

Several days later, on March 13, 2020, the Court held a further evidentiary hearing that

focused on whether the sneakers should be suppressed.  Minute Entry (March 13, 2020); Dkt. 93.

At the hearing, the Court concluded, based on testimony from Detective Darin Brake, that

whether the sneakers should be suppressed likely turned not on the Fourth Amendment's

particularity requirement but, rather, on whether the plain view doctrine applied.  Dkt. 93 at 74.

The Court therefore ordered the parties to file supplemental briefs addressing the plain view

2

doctrine.  On August 10, 2020, after several extensions of time, Thomas filed his brief, Dkt. 118,

and on August 17, 2020, the government filed its response, Dkt. 120.

**B.      Factual Background**

On July 13, 2017, Judge Ronald Wertheim of the Superior Court of the District of

Columbia granted a search warrant for the apartment where Thomas was living, located at 4721

Texas Avenue SE, Apartment 201, in Washington, D.C.  Dkt. 62-2; *see also* Dkt. 118 at 1.  As

explained in the supporting affidavit, the warrant was sought as part of an investigation into a

string of armed robberies, including of Dunkin' Donuts and Mike's Market stores.  Dkt. 62-2 at

3–4; Dkt. 118 at 4.  Officers from the Metropolitan Police Department ("MTD") executed the

warrant on July 14, 2017.  Dkt. 118 at 1.  The warrant authorized the seizure of, among other

items, "black sneakers with white writing."  Dkt. 62-2 at 1; Dkt. 118 at 1.  But Detective Brake,

the lead investigator for the Dunkin' Donuts robbery, testified at the March 13, 2020 motion

hearing that officers seized a pair of gray New Balance sneakers instead.  *Id.* at 2.  They did not

find any black sneakers during the search.  *Id.*

Footage of the search of the apartment filmed with an officer's body-worn camera

demonstrated, according to Detective Brake, that another officer helping to conduct the search

found the New Balance shoes and pointed them out.  Dkt. 93 at 20.  Detective Brake testified

that he saw the shoes "not quite under the bed, but they were at the edge of the bed" in the living

room.  *Id.* at 12.  He further testified that the officers "were trying to determine [whether the

shoes] were a part of the evidence we were looking for."  *Id.* at 20–21.  Another officer, Sergeant

Johnson, then pulled up on his phone an image of the be-on-the-lookout poster ("BOLO") for a

related robbery of a business named Sharks and showed it to Detective Brake.  *Id.* at 21.

Detective Brake recounted that "we compared the shoes that the person had on in the [BOLO] to the shoes that we had that had been located, and they appeared to be the same shoes." *Id.*

At the hearing, Detective Brake explained in detail his mental process in making the connection between the shoes they discovered during the search and the separate Sharks robbery. At the time of the search, Detective Brake knew that there had been "four other armed robberies that occurred within about a block of that Dunkin' Donuts that appeared to have the same suspect." *Id.* at 8. He testified that the lead detective for the Sharks robbery had told him that, based on a store clerk's description, "the robbery suspect was wearing black and gray New Balance sneakers." *Id.* at 8–9. Thus, Detective Brake testified, "once we got in there and we saw those shoes, I recalled from the previous robberies that there was New Balance shoes that were gray in color that had another color in it that I recalled I thought was black. And then Sergeant Johnson showed me the BOLO, and it appeared to be the same shoes or close to the same shoes." *Id.* at 50. Detective Brake also testified that he "recalled from descriptions of other robberies that there were gray New Balances with another color." *Id.* at 73.

As to whether Detective Brake made an immediate connection between the shoes and the description of the suspect in the Sharks robbery, he testified: "I was trying to remember all of the various things, descriptions that we had been given over these multiple robberies, and I did remember New Balances, a gray color and another color which I thought was black. And then the officer brought up the BOLO." *Id.* at 21–22. The BOLO, Detective Brake testified, "kind of brought it home." *Id.* at 21.

## II.  ANALYSIS

Evidence seized without a warrant is admissible under the plain view doctrine if three conditions are satisfied: the officer who obtained the evidence must have been lawfully present at

the time of the seizure; the officer must have had a lawful right of access to the object itself; and

the incriminating nature of the evidence must have been immediately apparent. *Horton v.*

*California*, 496 U.S. 128, 136–37 (1990).  Only the final factor is contested here.[1]  For the

incriminating nature of the evidence to be immediately apparent, the officer must have "probable

cause to believe that an item was incriminating without the benefit of information from any

unlawful search or seizure." *United States v. Pindell*, 336 F.3d 1049, 1055 (D.C. Cir. 2003)

(citing *United States v. Garces*, 133 F.3d 70, 75 (D.C. Cir. 1998)) (internal quotation marks

omitted).  There must be "a practical, nontechnical probability that incriminating evidence is

involved" to establish probable cause under the plain view doctrine. *Id.* (quoting *United States v.*

*Castorena-Jaime*, 285 F.3d 916, 924 (10th Cir. 2002)).

Thomas argues in his supplemental brief that the plain view doctrine does not apply here

"because the incriminating nature of the shoes was not 'immediately apparent' but instead

required review of a look-out poster of a different robbery before the shoes became relevant to

the investigation." Dkt. 118 at 4.  The officers erred, Thomas contends, by looking to

information outside the scope of the warrant—information about an entirely separate robbery—

to establish probable cause that the shoes were incriminating. *Id.* at 6.  In Thomas's view,

therefore, "[t]he fact that Detective Brake had to consult the BOLO relating to a robbery

different from the one that was the subject matter of the [warrant] shows that the incriminating

nature of the gray New Balance sneakers was not 'immediately apparent.'" *Id.* at 6–7.

The government argues in response that the incriminating nature of the evidence was

immediately apparent to the officers based on the collective knowledge of Detective Brake and

---

[1]  The Court finds, in any event, that the officers were lawfully present pursuant to the search warrant, Dkt. 62-2; Dkt. 93 at 9–10, and that the shoes, although partially under the bed, were in plain view, Dkt. 93 at 12; *see also* Dkt. 64-3 (Ex. C).

Sergeant Johnson. Dkt. 120 at 4. The government adds that "[b]ased on Detective Brake's knowledge of the Dunkin Donuts armed robbery, having viewed the Dunkin Donuts video surveillance and observed the footwear worn by the suspect, coupled with his knowledge of the other armed robberies and the collective review of the BOLO flyer, a practical, nontechnical probability existed that the grey New Balance sneakers were incriminating evidence of the armed robberies." *Id.* at 4–5.

The government has the better argument. Officers' collective knowledge can be sufficient to demonstrate that the incriminating nature of an item in plain view was immediately apparent. *Garces*, 133 F.3d at 74. And an officer's knowledge about a similar crime with a similar suspect profile may also be sufficient to establish that the incriminating nature of an object in plain view was immediately apparent. *Pindell*, 336 F.3d at 1055–56 (holding that the incriminating nature of a suspect's notebook was immediately apparent because it had become clear to the searching officer that the suspect had committed a similar robbery and both victims had described the use of a notebook).

Applying these principles here, Detective Brake's preexisting knowledge about similar armed robberies with a similar suspect profile, bolstered by Sergeant Johnson and the BOLO, made the incriminating nature of the gray New Balance sneakers immediately apparent. As in *Pindell*, *id.*, Detective Brake was aware of and involved in the investigations of other armed robberies, which he knew had similar profiles, Dkt. 93 at 8. And he had worked with the lead detective on the Sharks robbery, who had conveyed the store clerk's description of the suspect, including the shoes that the suspect had worn. *Id.* at 8–9, 37–38, 41, 64–66, 73. Based on that knowledge, the incriminating nature of the sneakers was immediately apparent.

The officers' consultation of the BOLO during the search does not undermine—and, indeed, adds support for—this conclusion. *Id.* at 48–50. "The meaning of the 'immediately apparent' requirement has been the subject of some debate within the Supreme Court," *Pindell*, 336 F.3d at 1054–55, and in the lower courts as well, *see Garces*, 133 F.3d at 75–76 (citing cases). The Supreme Court has held, for instance, that even when a car is discovered in plain view, the doctrine does not apply where the car's "probative value" remained "uncertain" until after "the interiors were swept and examined microscopically." *Horton*, 496 U.S. at 137 (discussing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971)). But it is also settled that "the phrase 'immediately apparent'" does not require "temporal" immediacy but, rather, encompasses situations in which "the incriminating nature of the item . . . become[s] apparent[] in the course of the search, without the benefit of information from any unlawful search or seizure." *Garces*, 133 F.3d at 75. In *Garces*, for example, the plain view doctrine applied to the seizure of a car key, even though the probative value of the key became apparent only after it was initially found and the investigating officers spoke to the owner of a car parked outside the residence and, with the owner's consent, used the key to open the car. *Id*.

Use of the BOLO to confirm Detective Brake's preexisting knowledge, if anything, stands on firmer ground than the use of the witness interview and operation of the key that the D.C. Circuit approved in *Garces*. The officers did not rummage through Thomas's belongings, they did not engage in further testing or analysis of the sneakers, and they did not use any information that was unlawfully found or seized. Instead, they merely consulted the investigative information they already had—and did so only to confirm that the sneakers were incriminating. Far from undercutting the purposes the Fourth Amendment, the care that the

investigating officers took before seizing the shoes ensured that the shoes were not seized without probable cause.

The Court, accordingly, finds that the officers were lawfully present when they saw the sneakers; that the sneakers were found in plain view; and that the incriminating nature of the evidence was immediately apparent.  The seizure of the shoes was therefore proper.

## CONCLUSION

For the reasons previously provided on the record and the additional reasons explained above, Thomas's second motion to suppress tangible evidence, Dkt. 62, is hereby **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** with respect to the red bags; **DENIED** with respect to the bandanas, the hat, and the sneakers; and **DENIED** as moot with respect to the cellphones and narcotics.

**SO ORDERED**.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  November 2, 2020